**ROSEBUD COAL SALES COMPANY, INC., Plaintiff-Appellee,**

v.

**Cecil D. ANDRUS, Secretary of the Department of the Interior, et al., Defendants-Appellants.**

No. 80–1842.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 13, 1981.

Decided Jan. 8, 1982.

Jerry Jackson, Atty., Appellate Section, Land and Natural Resources Div., U. S. Dept. of Justice, Washington, D.· C. (Sanford Sagalkin, Deputy Asst. Atty. Gen., Anthony C. Liotta, Acting Asst. Atty. Gen., Dirk D. Snel and Margaret M. McMahon, Attys., U. S. Dept. of Justice, Washington, D. C., with him on the briefs), for defendants-appellants.

William E. Murane, of Holland & Hart, Denver, Colo. (Marilyn S. Kite, of Holland & Hart, Laramie, Wyo., Kenneth D. Hubbard, Gerald J. Schissler, Paul D. Phillips, and Julian M. Izbiky, of Holland & Hart, Denver, Colo., with him on the briefs), for plaintiff-appellee.

Russell S. Jones, Denver, Colo., for amicus curiae Beaver Creek Coal Co.

Robert G. Holt, of Martineau, Rooker, Larsen & Kimball, Salt Lake City, Utah, for amicus curiae Eureka Energy Co.

Hugh C. Garner and William B. Prince, Salt Lake City, Utah, for amicus curiae Franklin Real Estate Co.

M. William Tilden, of Gresham, Varner, Savage, Nolan & Tilden, San Bernardino, Cal., for amicus curiae Kaiser Steel Corp.

Russell H. Carpenter, Jr. and David N. Heap, Washington, D. C., for amicus curiae Rocky Mountain Energy Co.; Kenneth R. Oldham, Broomfield, Colo., and Covington & Burling, Washington, D. C., of counsel.

Before SETH, Chief Judge, McWILLIAMS, Circuit Judge, and BROWN,* District Judge.

SETH, Chief Judge.

The plaintiff sought review of an administrative decision by the Interior Board of Land Appeals which held that the Department of Interior could readjust the terms of a coal lease issued to a predecessor of plaintiff at a time after the anniversary date of the lease. The United States District Court for the District of Wyoming held that the lease could not then be readjusted and reversed the decision of the Interior Board of Land Appeals. The issue came before the trial court on cross motions for summary judgment. The Department of Interior has taken this appeal.

The issue is a narrow one, and presents the question whether by a notice given about two and one-half years after the anniversary date the Department has authority to exercise a right given it under the Mineral Leasing Act to readjust the terms of a coal lease. The lease is C–057086 issued by the Department of Interior dated April 5, 1935 covering about two sections of land in Carbon County, Wyoming. Coal leases at that time were issued for an indeterminate term and contained a provision that at the end of each twenty-year period succeeding the date of the lease the Secretary of Interior could readjust the terms, royalties and conditions.

We apply the typical scope of review to the agency action, *Ballard E. Spencer Trust, Inc. v. Morton*, 544 F.2d 1067 (10th Cir.), and agree with the trial court as to the proper content of the administrative record. The Interior Board of Land Appeals made no factual determination and no evidentiary hearing was held.

Section 3 of the coal lease in issue provides in part:

"It is mutually understood and agreed that the lessor shall have the right to readjust and fix the royalties payable hereunder and other terms and conditions at the end of 20 years from the date hereof, and thereafter at the end of each succeeding 20-year period during the continuance of this lease...."

---

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

A time is thus stated when the Government can "readjust" the royalty and other terms—at the end of each twenty-year period. This provides a right to the Government in the nature of an option to make adjustments it considers necessary or to let the opportunity pass. The scope or nature of the changes is not limited and there thus exists a very broad power to make changes considered to be in accordance with the proper administration of the lands. This opportunity comes at intervals albeit long but so prescribed by Congress. The Secretary, of course, need not take any action at all under the lease provisions.

As might be expected, the lease adopted the statutory language of the Mineral Lands Leasing Act (30 U.S.C. § 207). The Act then provided that the Secretary of Interior could readjust the terms of the lease "at the end of each twenty-year period succeeding the date of the lease." It is apparent that the lease incorporates the provisions of the Act in any event.

The regulations applicable to coal leases before and on April 5, 1975, which date marked the end of the second twenty-year period of the lease, had a like provision (43 C.F.R. § 3522.2–1, 1974):

> "Coal, potassium and phosphate leases are issued subject to readjustment of the terms and conditions of the lease at the end of each 20-year period succeeding the date of the lease. . . . The lessee will be notified of the proposed readjustment of terms or notified that no readjustment is to be made. . . . Notice of the proposed readjustments will be given, whenever feasible, before the expiration of each such 20-year period."

The time set for readjustment by the regulations was thus again "at the end of each 20-year period." The regulation added the provision as to notice, an item not included in the contract nor in the Act. The "anniversary date" as used herein means the end of each twenty-year period following the date of the lease.

■ The lease agreement was entered into by the Department in administering the public lands. *United States v. Essley,* 284 F.2d 518 (10th Cir.). The lease and the transactions in connection therewith created a commercial relationship. *United States v. Ohio Oil Co.,* 163 F.2d 633 (10th Cir.). The Secretary, before the trial court, asserted that he was seeking in this transaction to "deal realistically in a business context." We should, as did the trial court, consider the entire contract in the context suggested by the Secretary. We must also consider the entire contract in the context of the Mineral Leasing Act and the regulations. In *United States v. Essley,* 284 F.2d 518 (10th Cir.), in determining the meaning of an oil and gas lease issued under the Mineral Lands Leasing Act, we used the typical contract law doctrines applicable to commercial transactions. *See also United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224, and *In Re Murdock Mach. & Eng. Co. of Utah,* 620 F.2d 767 (10th Cir.).

■ In so considering all the contract provisions, and in an application of the ordinary meaning to the terms, it is not difficult to reach the conclusion that the readjustment was to be when each twenty-year period expired, on that date and not at a later time. The statement of time "at the end of" on its face is not susceptible to any variation as it is a precise time. Furthermore, as mentioned above, it is presented as an option to the Government to make the changes it considers necessary or not to act at all. Since such broad discretion is given, and considering the nature of the mining business, it might be expected that the time to act was precisely fixed and set at infrequent intervals. There is no legislative history to suggest any variation on the ordinary meaning nor to indicate that a fixed time provision was not to be considered of the essence. It was a provision selected by Congress and repeated from time to time.

We thus fully agree with the trial court's construction of this provision of the lease. Thus the answer would appear to be clear by an application of typical doctrines of contract law in a typical business context. But is there any room for exceptions or variations, or are there any circumstances

leading us to other than the ordinary consequences?

The Government argues on this point that it did not take action in this instance to give notice or to readjust because it was otherwise occupied with matters of basic policy on coal leasing. The record demonstrates that the Department was busy; however, this cannot be advanced as a valid reason for not acting at the end of the term. There was a moratorium on new leases, but the record clearly shows that the moratorium and the policy reviews pertained only to new leases and could only pertain to new leases. During the moratorium period (1970–1976) the Department adjusted the provisions of more than ten coal leases. The moratorium cannot be advanced as a reason why action should not have been taken by the Department had it been desired.

The time for readjustment of coal lease terms comes so infrequently that it must be assumed that timely consideration is given in the ordinary administrative process. If no action is taken by the Government for an extended time it is reasonable to assume that a decision was made not to take advantage of the opportunity provided by the Mineral Lands Leasing Act. Thus a continuation of the old royalty rate and other lease provisions can be considered a choice then made by the administrators. When such a choice was made we find no provisions in the Act nor in the regulations permitting the Department to reverse the position it took originally at the prescribed time.

The record demonstrates, as the trial court found:

"Data submitted by Interior suggests that the historic practice of the agency was to readjust leases at the end of the readjustment period, or very soon thereafter. The list of coal lease readjustments occurring from January 1, 1960 to August 4, 1976 indicates that the majority of the leases were readjusted within days of the readjustment date and a substantial number received readjustment notices before the readjustment date expired. Further, on at least fifty-three occasions dating back to 1965, Interior had permitted the readjustment date to pass without providing either notice of readjustment *or* notice that no readjustment would occur." (Emphasis in original.)

Thus as to other coal leases in the prior sixteen years, it was not uncommon for the Department to take no action when it was decided not to readjust. The timing of the readjustments made in prior years, as indicated by the trial court, does not demonstrate a substantial variation from the exact day. The record does not show what other readjustments were consented to as was a prior adjustment in the lease in question.

The Government urges as an added factor that there were changes in the Mineral Lands Leasing Act provisions as to coal in August 1976 (90 Stat. 1087). These in Section 7 are not particularly significant as to the issues except there is a repetition of the readjustment option "at the end of its primary term of twenty years and at the end of each ten-year period thereafter." The Section 7 amendment provided for a primary term and also for the royalty to be not less than 12.5%. There is no suggestion whatever that the amendment was to be retroactive and the contrary is indicated.

There was no published ruling or regulation that the agency had construed "at the end of" to mean after the end of although there were scattered instances of notices having been sent by the Department after the lease anniversary. *See Commissioner v. P. G. Lake, Inc.*, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, and see the trial court's finding quoted above. There was no construction of the statute by the agency.

Following the amendment to Section 7 in 1976 the Department undertook to change the regulations by publication on December 29, 1976. (43 C.F.R. § 3451.1(c).) This change was directed to coal leases which were subject to readjustment before August 4, 1976 and which had not been readjusted. It provided that these leases be readjusted "to conform to the requirements

of the Federal Coal Leasing Amendments Act." Pursuant to the retroactive regulation the Department sent notice on October 4, 1977 to plaintiff that its lease would be readjusted and so precipitated this suit. As mentioned, the trial court held that this readjustment came too late—some two and one-half years after the expiration of the twenty-year period—and the new regulations were not within the terms of the statute. We must agree.

The Government made no showing that the giving of notice at or before the anniversary date was not "feasible." The trial court found:

"The record discloses no reason why notice was not given to Rosebud prior to the readjustment date in compliance with the regulation or why it was not feasible to do so."

The court also found:

"The Bureau of Land Management's consideration of the readjustment of Rosebud's coal lease began on September 5, 1974, seven months prior to the readjustment date of April 5, 1975 by the requesting of recommendations and reports from the United States Geological Survey regarding the readjustment. The government could easily have notified Rosebud on April 5, 1975 at least that it intended to readjust the terms of its lease."

The failure to give notice in 1975 without a reason to demonstrate it was not "feasible" must constitute a failure by the Department to follow its own regulations had an adjustment been contemplated. We do not assume that the Department would fail to follow its regulations, but in view of the record we could very well assume, as mentioned above, that the date was passed because it had been determined that no adjustment was to be made.

Thus we must conclude that the Department's attempt by retroactive regulations and by a belated notice to readjust the coal lease in issue was outside of the statutory authority of the Department and contrary to the terms of the lease. The opportunity to adjust the lease pursuant to the Mineral Leasing Act was presented but the Department chose to forego it.

We express no opinion as to the reasonableness of royalty rates.

AFFIRMED.