**FMC WYOMING CORPORATION,**
Plaintiff,

v.

**James G. WATT, as Secretary of the United States Department of the Interior; Robert F. Burford, as Director of the Bureau of Land Management, United States Department of the Interior; Jim H. Taylor, as Chief, Branch of Solid Minerals, Wyoming State Office Bureau of Land Management; Marla B. Bohl, as former Chief, Land and Mining, Wyoming State Office, Bureau of Land Management; Harold G. Stinchcomb, as former Chief, Branch of Energy Minerals, Wyoming State BLM Office; J. Stan McKee, as former Acting Chief, Branch of Solid Minerals, Wyoming State BLM Office; and the United States Department of the Interior, Defendants.**

No. C83–347–K.

United States District Court,
D. Wyoming.

June 29, 1984.

Marilyn S. Kite, Holland & Hart, Cheyenne, Wyo., for plaintiff.

Richard A. Stacy, U.S. Atty., for the District of Wyoming, Cheyenne, Wyo., and Lyle K. Rising, Dept. of the Interior, Denver, Colo., for defendants.

## ORDER REVERSING DECISION OF INTERIOR BOARD OF LAND APPEALS WITH FINDINGS

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court upon cross motions for summary judgment and upon request for judicial review of the decision of the Interior Board of Land Appeals (IBLA), plaintiff appearing by and through its attorney, Marilyn S. Kite, and

the federal defendants appearing by and through their attorneys, Richard A. Stacy and Lyle K. Rising, and the Court having heard the arguments of counsel in support of and in opposition to said motions and having carefully considered the memoranda on file herein and being fully advised in the premises, FINDS as follows:

This matter was originally brought before this Court as an appeal from the IBLA affirmance of a BLM decision which held (1) that notice of readjustment given on or before the 20 year anniversary of the lease was sufficient for timely readjustment under the statute, and (2) that the 12½% royalty rate named in the Federal Coal Leasing Amendments Act of 1976 (FCLAA) was mandatory upon readjustment of pre-existing leases. The relevant facts are as follows:

The United States, through defendant Secretary, issued two federal coal leases to plaintiff on March 1, 1963. The royalty rate fixed in the leases was 17½ cents per ton for strip mined coal. The United States expressly reserved the "right reasonably to readjust and fix royalties payable hereunder and other terms and conditions at the end of 20 years from the date hereof." The leases were also subject to the Mineral Lands Leasing Act of 1920 (MLLA) and all reasonable regulations of the Secretary then in force.

Plaintiff opened the Skull Point Mine near Kemmerer, Wyoming, making substantial investment in the development and production of the coal therein. The mine has been classified as a special bituminous coal mine wherein the cost of extracting the coal increases over the life of the mine due to dipping coal seams. Under that classification the mine is exempt from certain reclamation standards under the Surface Mining Control and Reclamation Act. Only one other mine is so classified in the entire United States—the Pittsburgh and Midway Mine neighboring plaintiff's Skull Point Mine. Plaintiff's royalty was readjusted in April 1983. The anniversary date allowing readjustment of the Pittsburg and Midway lease does not occur until 1998.

In 1976, Section 7 of the MLLA of 1920 which was applicable to plaintiff, was amended to read as follows:

Sec. 7. (a) A coal lease shall be for a term of twenty years and for so long thereafter as coal is produced annually in commercial quantities from that lease. Any lease which is not producing in commercial quantities at the end of ten years shall be terminated. The Secretary shall by regulation prescribe annual rentals on leases. A lease shall require payment of a royalty in such amount as the Secretary shall determine of not less than 12½ per centum of the value of coal as defined by regulation, except the Secretary may determine a lesser amount in the case of coal recovered by underground mining operations. The lease shall include such other terms and conditions as the Secretary shall determine. Such rentals and royalties and other terms and conditions of the lease will be subject to readjustment at the end of its primary term of twenty years and at the end of each ten-year period thereafter if the lease is extended.

March 1, 1983 was the 20 year anniversary date of plaintiff's lease whereupon the leases could be readjusted. Plaintiff was notified on August 23, 1982 that BLM intended to readjust the leases and then was notified by BLM on December 22, 1982 of the proposed terms and conditions of the readjustment. Plaintiff objected to the proposed terms of the readjustment on February 11, 1983. The BLM's response to objections and finalization of the readjustment terms (which still included the 12½% royalty rate) were contained in a decision dated April 6, 1983. Plaintiff claims that readjustment was untimely and is, therefore, barred.

Prior to the FCLAA, the terms of leases subject to readjustment were readjusted on an individual basis. An evaluation was made on the specific facts of each mining operation. Plaintiff presented a factual statement to the BLM and to the IBLA outlining their situation which they contended made the 12½% royalty unreason-

able. No hearing was held on the matter. BLM, affirmed by the IBLA, determined that the 12½% royalty rate was absolute and mandatory upon readjustment of pre-FCLAA leases. Plaintiff contends that such a readjustment is arbitrary, capricious and an abuse of discretion.

■ Both parties rely on the case of *Rosebud Coal Sales Co. v. Andrus,* No. C79–160B (D.Wyo. June 10, 1980), which case was appealed and affirmed in the Tenth Circuit, *Rosebud Coal Sales Co. v. Andrus,* 667 F.2d 949 (10th Cir.1982). This Court has made a careful reading of the case, on both levels. As for the untimely readjustment, this Court finds the *Rosebud* case dispositive and concludes that readjustment was *not* untimely in the present case. In the *Rosebud* case the anniversary date of readjustment was April 5, 1975. Notice of Intent to Readjust was not given until October 4, 1977. Both the district court and the Tenth Circuit Court of Appeals found that such readjustment was untimely and thereby barred. However, both courts also indicate that it is notice of intent to readjust that must be given prior to the anniversary date. The district court stated:

> Rosebud did nothing here that would have prevented the United States from giving it notice prior to the twenty year anniversary date that the United States intended to readjust the terms of the lease. (citations omitted) *Rosebud,* C79–160B *supra* at 10.

. . . . .

> On October 4, 1977 the plaintiff was sent a notice that the Department intended to readjust the lease terms. No excuse was offered to show why that simple notice couldn't have been given as easily on April 4, 1975, prior to the end of the term. *Id.*

. . . . .

> The failure to provide the plaintiff any type of notice prior to the twenty year anniversary date does not evidence good faith performance of the express terms of its contract by the government ... *Id* at 10, 11.

. . . . .

> The government could easily have notified Rosebud on April 5, 1975 at least that it intended to readjust the terms of its lease. *Id* at 14.

The Tenth Circuit Court of Appeals agreed with the district court, affirmed its decision, and stated:

> The Government made no showing that the giving of notice at or before the anniversary date was not 'feasible.' 667 F.2d at 953.

. . . . .

> The failure to give notice in 1975 without a reason to demonstrate it was not 'feasible' must constitute a failure by the Department to follow its own regulations had an adjustment been contemplated. *Id.*

It is clear from the ruling in *Rosebud* and the explanations set forth by the courts therein, that notice prior to the anniversary date made readjustment in the present case timely.

■ However, the second issue for consideration is whether BLM and IBLA were arbitrary and capricious in mandatorily applying the 12½% royalty rate to the leases in question, without consideration of plaintiff's specific fact situation. This Court finds that such application of the 12½% royalty rate is arbitrary, capricious, and an abuse of discretion.

■ Defendants contend that the amendment to Section 7 (cited above) which provides: "A lease shall require payment of a royalty in such amount as the Secretary shall determine of not less than 12½ per centum of the value of coal as defined by regulation" requires that the 12½% royalty rate be applied, not only to new leases as of the amendment date, but also mandatorily to pre-existing leases upon readjustment. This is a change from the method of readjustment applied to leases prior to the 1976 amendment, which method provided for an evidentiary basis, an individual analysis of the lease subject to readjustment. There is no indication in any part of the amendment that the method of readjustment is to be altered. Presumably, new leases, subject

to the 12½% royalty will be reviewed on their factual bases when the readjustment period comes due. To impose a new royalty rate at a 1000% increase without any type of factual analysis or consideration is not only arbitrary, it also defies the notion of equity. The leases in this case, and all leases issued prior to the 1976 amendment had a minimum royalty rate set. At the time of readjustment, that rate can be altered, but it can and should only be altered upon a complete evaluation of all the factors involved in an individual case. For example, one factor which should be considered in the present matter is the existence of a competitive bituminous coal mine which is not subject to readjustment and, therefore, the allegedly mandatory 12½% royalty rate could not be applied until 1998. A second factor is the very nature of plaintiff's mine, which presumably will be forced to produce less coal as a 12½% royalty rate contributes to making the costs of mining prohibitive.

It should not be overlooked that the leases provided for "reasonable" readjustment. It appears to this Court that a readjustment increasing the royalty rate over 1000%, which is based only upon mandatory application of a statutory minimum to pre-existing leases, without any consideration of facts involved in the individual leases is far from reasonable.

The *Rosebud* case, discussed earlier and cited by both parties, makes some reference to this issue, supportive of this Court's position. From the district court opinion:

> The record fails to support the imposition of a royalty of 12½%. No individual economic analysis of this lease was made. C79–160B, slip op. at 15.

> .     .     .     .     .

> No evidentiary basis was provided for the royalty rate established by the regulation. *Id* at 16.

Some mention is made by the parties concerning retroactivity. Plaintiff contends that the 1976 12½% royalty rate cannot be retroactively applied to old leases upon readjustment. Defendants contend that applying the new royalty rate to readjustments which occur *after* the 1976 amendment is *not* retroactive application. The Tenth Circuit Court of Appeals in the *Rosebud* case stated:

> The Section 7 amendment provided for a primary term and also for the royalty to be not less than 12.5%. There is no suggestion whatever that the amendment was to be retroactive and the contrary is indicated. 667 F.2d at 952.

■ This Court is of the opinion that mandatory application of the 12½% royalty rate to pre-existing leases, without a factual evaluation, *is* retroactive application of the provision, which everyone concedes was not intended and is not proper. The readjustment of existing leases is not a new event, rather it is an ongoing part of the original lease. To mandatorily apply a minimum royalty rate of 12½% is in essence to alter the original lease issued on March 1, 1963 with a 17½ cent royalty rate imposed under a statutorily minimum royalty rate of 5 cents per ton. That 5 cents royalty rate was, of course, only a statutory minimum, subject to the terms of the lease itself as well as the readjustment process, normally occurring after a case-by-case factual evaluation. Now defendants attempt to change the method of readjustment *and* the minimum royalty rate is a change of the original lease and thereby a retroactive application of the 1976 amendment.

Finally, the Court notes that defendants argue that plaintiff has not exhausted its administrative remedies in that it has not applied for a royalty reduction under 30 U.S.C. § 209. That provision provides:

> The Secretary of the Interior, for the purpose of encouraging the greatest ultimate recovery of coal, oil, gas, oil shale * * * and in the interest of conservation of natural resources, is authorized to waive, suspend, or reduce the rental, or minimum royalty, or reduce the royalty on an entire leasehold, or on any tract or portion thereof segregated for royalty purposes, whenever in his judgment it is necessary to do so in order to promote development, or whenever in his judgment the leases cannot be successfully

operated under the terms provided therein. * * *.

However, the Department of Interior in its interpretation of this provision shows an intent for sparing use (if at all), only upon a showing of hardship and for a temporary period of time (there is some indication no reduction could exceed three years). 44 Fed.Reg. 42607 (1969); 87 I.D. 69 (Dec. 11, 1979). Even were the royalty reduced in plaintiff's case under this provision, it would not be a solution to plaintiff's problems with the lease readjustment. Furthermore, a temporary reduction of the royalty rate is no substitute for a reasonable readjustment. Were the readjustment properly based on the individual factors in plaintiff's case, it is likely that a request for reduction under 30 U.S.C. § 209 would be unnecessary.

In summary, while the readjustment process was timely in the present case, the 12½% royalty rate was imposed arbitrarily and capriciously. Before readjustment can be completed, the BLM must make careful consideration of the facts and circumstances involved in, and especially those specific to plaintiff's leases. The royalty rate readjustment must be reasonable in light of those facts and circumstances. The 12½% royalty rate, though now a statutory minimum, cannot be flatly and mandatorily imposed on pre-existing leases at the time of readjustment.

For the above-stated reasons,

NOW, THEREFORE, IT IS

ORDERED that the decision of the IBLA be, and the same is, hereby reversed and the matter is remanded for proceedings consistent with this opinion.