GULF OIL CORPORATION and Pittsburg & Midway Coal Mining Company, Plaintiffs,

v.

William P. CLARK, Secretary of the United States Department of Interior, et al., Defendants.

No. CIV–84–0157C.

United States District Court, D. New Mexico.

April 1, 1985.

John B. Pound, Montgomery & Andrews, Santa Fe, N.M., for plaintiffs.

William L. Lutz, U.S. Atty., Raymond Hamilton, Asst. U.S. Atty., Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

CAMPOS, District Judge.

This case is before the Court on Plaintiffs' Motion for Summary Judgment. The Court has considered the parties' memoranda and the record of this case, and finds and concludes that the Motion is not well-taken and should be denied.

### BACKGROUND

Plaintiffs brought this action requesting judicial review of a final decision of the Department of the Interior[1] which upheld a Bureau of Land Management ("BLM") decision to readjust the royalties and conditions of two 1961 coal leases pursuant to the Federal Coal Leasing Amendment Act of 1976.[2]

On April 1, 1961, the BLM issued two coal leases to Spencer Chemical Company, which later assigned the leases to Plaintiff Gulf Oil Corporation ("Gulf"). Gulf sublet these leaseholds to Plaintiff Pittsburg and Midway Coal Mining Company ("P & M"). Pursuant to Section 3(d) of each of the two leases, the United States expressly reserved:

> [t]he right reasonably to readjust and fix royalties payable hereunder and other terms and conditions at the end of 20 years from the date hereof and thereafter at the end of each succeeding 20-year period during the continuance of this lease unless otherwise provided by

---

1. *Gulf Oil Corp., Pittsburg and Midway Coal Mining Co.*, 73 IBLA 328 (1983).

2. 30 U.S.C. § 181 *et seq.* (1976).

law at the time of the expiration of any such period. Unless the lessee files objections to the proposed terms or a relinquishment of the lease within 30 days after receipt of the notice of proposed terms for a 20-year period, he will be deemed to have agreed to such terms.

The authority for this provision was in the Mineral Land Leasing Act of 1920, which stated, in pertinent part, that:

Leases shall be for indeterminate periods upon condition of diligent development and continued operation of the mine or mines, except when such operation shall be interrupted by strikes, the elements, or casualties not attributable to the lessee, and upon the further condition that at the end of each twenty-year period succeeding the date of the lease such readjustment of terms and conditions may be made as the Secretary of the Interior may determine, unless otherwise provided by law at the time of the expiration of such periods.

30 U.S.C. § 207 (1971). The United States, therefore, had the right to adjust the royalties and other lease terms and conditions on April 1, 1981.

In 1976, Congress enacted the Federal Coal Leasing Amendments Act ("FCLAA").[3] The FCLAA amended 30 U.S.C. § 207, and the amendment stated, in relevant part:

A coal lease shall be for a term of twenty years and for so long thereafter as coal is produced annually in commercial quantities from that lease. Any lease which is not producing in commercial quantities at the end of ten years shall be terminated. The Secretary shall by regulation prescribe annual rentals on leases. A lease shall require payment of a royalty in such amount as the Secretary shall determine of not less than 12½ per centum of the value of coal as de-

fined by regulation, except the Secretary may determine a lesser amount in the case of coal recovered by underground mining operations. The lease shall include such other terms and conditions as the Secretary shall determine. Such rentals and royalties and other terms and conditions of the lease will be subject to readjustment at the end of its primary term of twenty years and at the end of each ten-year period thereafter if the lease is extended.

30 U.S.C. § 207(a) (1976).

On December 20, 1980, BLM sent Plaintiffs a notice that the leases would be readjusted. On January 29, 1981, BLM sent Gulf a copy of the new lease forms, effective April 1, 1981. The conditions and royalty rate contained in the readjusted leases were those contained in amended 30 U.S.C. § 207. Gulf had sixty days to file objections to the new terms. On April 1, 1981, Gulf filed a general objection; BLM responded on May 22, 1981, allowing Gulf an additional thirty days to send in specific objections. Gulf notified BLM of its specific objections by letter dated September 9, 1981. In a letter received by Plaintiffs on December 23, 1981, BLM issued its decision denying, for the most part, Gulf's objections to the proposed readjusted terms and conditions.[4] Plaintiffs appealed to the Interior Board of Land Appeals ("IBLA") on January 15, 1982. The IBLA did not hold an evidentiary hearing.

On June 8, 1983, the IBLA affirmed in part and set aside and remanded in part the BLM decision. It revised the effective readjustment date to be April 3, 1981, not April 1, 1981.[5] The other remanded sections are irrelevant to this appeal.

On appeal of the final agency decision, Plaintiffs argue that (1) because BLM did not actually readjust the two leases before

---

3. See Section 1(a) of Pub.L. 94–377, Aug. 4, 1976, 90 Stat. 1083, as amended by Pub.L. 95–554, § 8, Oct. 30, 1978, 92 Stat. 2075.

4. BLM did eliminate Section 31 (relating to the application of state law and regulations), to which Gulf had objected.

5. Since BLM had indicated that the readjustment would become effective sixty days after receipt of the notice, and since Gulf received the notice on February 2, 1981, the IBLA computed the effective date to be two days later than the date figured by BLM.

the anniversary date of the twenty-year lease periods, it lost the right to do so until the end of the next twenty-year period (April 1, 2001), and (2) because BLM simply applied the conditions and royalty rate of amended Section 207 without making an individual economic and factual analysis, its action was arbitrary and capricious, beyond BLM's statutory authority, and an improper retroactive application of the 1976 amendment to 30 U.S.C. § 207.

OPINION

■ *Timeliness of the Readjustment.* Plaintiffs' rely on *Rosebud Coal Sales Co., Inc. v. Andrus,* 667 F.2d 949 (10th Cir. 1982) to argue that *actual* adjustment of the lease must occur before the expiration of the twenty-year period set out in Section 3(d) of the lease. *Rosebud* involved a 1935 coal lease containing a section requiring any readjustment to occur at the end of succeeding twenty-year periods—a provision similar to Section 3(d) of the leases at issue in this case. The Department of the Interior *gave notice* of the readjustment two and one-half years *after* the designated anniversary date. The Court of Appeals held that "the Department's attempt ... by *belated notice* to readjust the coal lease in issue was outside the statutory authority of the Department and contrary to the terms of the lease." *Rosebud,* 667 F.2d 949, 953 (emphasis added). It stated "[t]he *failure to give notice* in 1975 without a reason to demonstrate it was not 'feasible' must constitute a failure by the Department to follow its own regulations had an adjustment been contemplated." *Id.* (emphasis added). All *Rosebud* requires is that notice of readjustment be given on or before the twenty-year anniversary date of the leases. *FMC Wyoming Corp. v. Watt,* 587 F.Supp. 1545 (D.C.Wyo.1984). In the instant case, BLM gave notice of the proposed readjustment and in fact provided Plaintiffs with a copy of the new lease forms several months before April 1, 1981. The readjustment was timely.

■ *Retroactive Application of the FCLAA.* Plaintiffs argue that amended Section 207 should not be applied to pre-1976 coal leases such as theirs. Although *Rosebud Coal Sales* held that the FCLAA did not apply to pre-1976 leases which were subject to readjustment before August 4, 1976 and which had not been readjusted, it did not address the question of whether the FCLAA applied to pre-1976 leases at a post-1976 readjustment date. Under Section 3(d) of the 1961 coal leases in this case, the United States, as lessor, had the right "reasonably to readjust and fix royalties payable hereunder and other terms" at the end of twenty-year periods as long as the lease continued *"unless otherwise provided by law at the time of the expiration of any such period."* Amended 30 U.S.C. § 207 required a royalty of not less than twelve and one-half percent (with certain exceptions) and a readjustment date every ten years after the first twenty-year period. These terms were provided by law on April 1, 1981, and it is not a retroactive application of the 1976 FCLAA to make the 1981 readjustments conform to the provisions of the FCLAA. The scope or nature of the changes the United States can make pursuant to Section 3(d) of the leases and 30 U.S.C. § 207 of the 1920 Act "is not limited and there thus exists a very broad power to make changes considered to be in accordance with the proper administration of the lands." *Rosebud Coal Sales,* 667 F.2d at 951. The United States, therefore, had the authority to impose such changes on the contract at appointed times even without the FCLAA mandate. The express language of the 1976 Act and its legislative history indicate that the FCLAA applies to pre-FCLAA leases on post-1976 anniversary dates. *See* discussion in *Solicitor's Opinion,* M–36939, 88 I.D. 1003 (1981). The application of the FCLAA at the readjustment date was neither retroactive nor improper in this case; BLM was statutorily authorized to enact the changes at issue here, and it did not breach any of its obligations under the 1961 leases by readjusting them.

*Arbitrary and Capricious Determination.* The Court views Plaintiffs' challenge to the agency action as arbitrary and capricious to be a motion to reverse the administrative decision pursuant to 5 U.S.C. § 706(2)(A). The Court has allowed Plain-

tiffs to undertake discovery of whether the administrative record in this case is complete. It is, therefore, premature for the Court to decide Plaintiffs' motion to reverse or Defendants' motion to affirm the IBLA in this matter. Plaintiffs will have thirty (30) days from entry of this Opinion to undertake discovery for the limited purpose of determining whether the administrative record is complete. Plaintiffs should notify the Court at or before the end of thirty days whether the administrative record is entire. Defendants may have the opportunity to respond to the Court within ten (10) days after this time if their view of the record differs from the Plaintiffs'.