**FMC WYOMING CORPORATION, Plaintiff-Appellee/Cross-Appellant,**

**v.**

**Donald P. HODEL, as Secretary of the United States Department of the Interior; Robert F. Burford, as Director of the Bureau of Land Management, United States Department of the Interior; Jim H. Taylor, as Chief, Branch of Solid Minerals, Wyoming State Office, Bureau of Land Management; Marla B. Bohl, as Former Chief, Land and Mining, Wyoming State Office, Bureau of Land Management; Harold G. Stinchcomb, as Former Chief, Branch of Energy Minerals, Wyoming State BLM Office; J. Stan McKee, as Former Acting Chief, Branch of Solid Minerals, Wyoming State Bureau of Land Management; and the United States Department of the Interior, Defendants-Appellants/Cross-Appellees,**

**Colorado-Ute Electric Association, Inc.; Northern States Power Company; Peabody Holding Company, Inc.; System Fuels, Inc.; Western Coal Traffic League; Colowyo Coal Company, Amicus Curiae.**

**Nos. 84–2175, 84–2208.**

United States Court of Appeals, Tenth Circuit.

April 9, 1987.

Rehearing Denied in No. 84–2175 July 8, 1987.

Marilyn S. Kite (Patrick R. Day of Holland & Hart, with her, on the briefs), Cheyenne, Wyo., for plaintiff-appellee/cross-appellant.

Jean A. Kingrey, Sp. Litigation Counsel, Dept. of Justice (F. Henry Habicht II, Asst. Atty. Gen., Robert Klarquist, Atty., Dept. of Justice, of counsel, Lyle K. Rising and Stephen Brown, Office of Sol., Dept. of Interior, with her, on brief), Washington, D.C., for defendants-appellants/cross-appellees.

L. Christian Hauck and John R. McNeill, Montrose, Colo., for amicus curiae Colorado-Ute Elec. Ass'n.

Jack F. Sjoholm, Minneapolis, Minn., for amicus curiae Northern States Power Co.

Terry O'Connor, Denver, Colo., for amicus curiae Peabody Holding Co., Inc. and System Fuels, Inc.

Jon N. Halverson and Charles L. Kaiser of Davis, Graham & Stubbs, Denver, Colo., for amicus curiae Colowyo Coal Co.

William L. Slover, C. Michael Loftus, Donald G. Avery and Pauline E. Waschek of Slover & Loftus, Washington, D.C., for amicus curiae Western Coal Traffic League.

Before LOGAN, MOORE, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This dispute concerns a readjustment by the Secretary of the Interior of the terms and conditions of two coal leases between the United States and FMC Corporation, a Delaware corporation with its principal place of business in Chicago, Illinois, and qualified to do business in Wyoming. On administrative appeal, the Interior Board of Land Appeals (IBLA) held that the royalty readjustment was timely and that the adjusted royalty rate was lawful. *FMC Corp.*, 74 IBLA 389 (1983). Thereafter, FMC Corporation filed a petition for review in the United States District Court for the District of Wyoming.[1] On cross-motions for summary judgment the district court affirmed, in part, and reversed, in part, the decision of the IBLA, the district court holding that the royalty readjustment was timely but unlawful. *FMC Wyoming Corp. v. Watt*, 587 F.Supp. 1545 (D.Wyo. 1984). Both parties appeal. We affirm, in part, and reverse, in part, the judgment of the district court, holding that the royalty readjustment was both timely and lawful. This case is a companion case to *Coastal States Energy Co. v. Hodel*, 816 F.2d 502 (10th Cir.1987).

Our starting point is the Mineral Lands Leasing Act of 1920 (MLLA). 41 Stat. 437 (1920), *amended by* 30 U.S.C. § 201 et. seq. (1976). That Act provided, *inter alia,* that the Department of Interior could issue leases on federal lands for an indeterminate term to private parties to mine and remove coal at a royalty rate to be fixed by the Secretary, such rate, however, not to be less than five cents per ton of coal and subject to the right of the Secretary to readjust the terms and conditions of the lease, including the royalty rate, at the end of each 20–year period following the issuance of the lease.[2]

On March 1, 1963, the two leases here involved were entered into by the Secretary of the Interior, on behalf of the United States, and FMC. The leases covered land near Kemmerer, Wyoming, now known as the Skull Point Mine. Both leases were made subject to MLLA (1920) and called for a royalty payment of 17½ cents per ton of coal while providing for periodic readjustment of the terms and conditions of the leases at 20–year intervals.[3]

On August 4, 1976, the Federal Coal Leasing Amendments Act (FCLAA) was enacted by Congress, which amended much of the Act of 1920. 30 U.S.C. § 201 et seq. (1982). FCLAA (1976) included a provision that royalty on a coal lease shall be in such amount as the Secretary shall determine, but not less than 12½% of the value of the coal.[4] 30 U.S.C. § 207 (1982).

The 20–year anniversary date on the two coal leases held by FMC was March 1, 1983. On August 23, 1982, some six months before the March 1, 1983, anniversary date, the Bureau of Land Management (BLM) sent formal notice to FMC of its intent to readjust the terms and conditions of these two leases on their anniver-

---

**1.** After instituting the present proceeding, FMC Corporation assigned its interest in the two leases to FMC Wyoming Corporation, and the latter was substituted as the plaintiff in this proceeding. However, FMC Wyoming Corporation will hereinafter be referred to as simply FMC.

**2.** Specifically, Section 7 of MLLA (1920) provided as follows:

[l]eases shall be for an indeterminate period … upon the further condition that at the end of each 20–year period succeeding the date of the lease such readjustment of terms and conditions may be made as the Secretary of the Interior may determine, unless otherwise provided by law at the expiration of such periods.

**3.** Specifically, both of FMC's leases reserved the following right to the lessor:

[t]he right reasonably to readjust and fix royalties payable thereunder and other terms and conditions at the end of 20 years from the date hereof and thereafter at the end of each succeeding 20–year period during the continuance of this lease unless otherwise provided by law at the time of the expiration of any such period.

**4.** Exempted from the 12½% royalty rate was coal recovered by underground mining. The rate for this coal was left to the discretion of the Secretary. 30 U.S.C. § 207 (1982). However as the leases held by FMC cover only surface mined coal, the statutorily set rate of 12½% is the only rate at issue in this case.

sary dates.[5] On December 22, 1982, 68 days prior to the March 1, 1983, anniversary date, the terms of BLM's readjustments were sent FMC. Included in these readjustments was a readjusted royalty rate of 12½% of the value of the coal mined. The notice of the adjustments provided that the readjustments would become effective on March 1, 1983, the 20-year anniversary date of the two leases, but, at the same time, allowed FMC 60 days to file any objections. FMC filed objections on February 11, 1983. These objections were dismissed by the BLM on April 6, 1983. FMC appealed the BLM decision to the IBLA, the latter upholding the BLM's decision on July 29, 1983. 74 IBLA 389 (1983). FMC thereafter sought judicial review of the IBLA's decision in the United States District Court for the District of Wyoming.

## No. 84-2208

The district court held that the Secretary's readjustment of the royalty rate in FMC's leases was timely. FMC appeals from that part of the district court's final judgment. We are in accord with the district court's resolution of this matter.

Section 7 of MLLA (1920) stated that "readjustments" may be made "at the end of each 20-year period succeeding the date of the lease...."[6] In line with the provisions in section 7 of MLLA (1920), FMC's leases also reserve to the Secretary the right to readjust the terms and conditions of the lease "at the end of 20 years from the date hereof [the date of the lease]...." As stated, FMC's two leases were dated March 1, 1963, and, accordingly, the 20-year anniversary date for both leases was March 1, 1983. It is uncontested that BLM gave FMC notice on August 23, 1982, over six months before the anniversary date of the two leases, that BLM intended to readjust the terms and conditions of the two leases.

■ FMC's position on the timeliness issue is that under MLLA (1920) and the leases here involved the *final* decision of the BLM to readjust terms and conditions of an existing coal lease may not occur *after* the 20-year anniversary date of the lease involved. In this case, the *final* action of the BLM readjusting the terms and conditions of FMC's leases occurred on April 6, 1983, 37 days after the anniversary date of the two leases, i.e., March 1, 1983. Thus, argues FMC, the readjustments of the existing leases did not occur "at the end" of 20 years after the date of the lease, as required by MLLA (1920) and the leases themselves.

The Secretary's position is that there is compliance with both the statute and the language of the leases if the notice of intent to readjust is given the lessee *prior* to the 20-year anniversary date.[7] In the instant case, such notice was given more than six months prior to the 20-year anniversary date. Moreover, the Secretary points out that, though under regulation he was not required to advise the lessee *before* the 20-year anniversary date of the particular readjustments to be made, in the instant case FMC was nonetheless advised of the readjustments, including the increase of the royalty rate to the statutory minimum set forth in FCLAA (1976), on December 22, 1982, 68 days before the March 1, 1983, anniversary date. In connection with the timeliness issue, both FMC

---

5. This notice informed FMC that "the lease terms and conditions will be readjusted under the provisions of 43 C.F.R. § 3451." The cited regulation provided that the lease royalty shall be readjusted to conform to the minimum rate proscribed in § 3473.3-2. 43 C.F.R. § 3451.-1(a)(2) (1986). Section 3473.3-2(a)(2) required a royalty of not less than 12½% of the value of the surface mined coal.

6. FCLAA's § 6 which replaced § 7 of the MLLA (1920) adopted the same language requiring readjustment to be "at the end of" the applicable term. 30 U.S.C. § 207 (1982).

7. The Secretary has promulgated regulations covering coal lease readjustments. These regulations require notice of intent to readjust prior to the anniversary date but then allow for two years in which to finalize the terms. 43 C.F.R. § 3451.1(c) (1986). Prior to being finalized, the Secretary published regulations calling for notice of intent on or before the readjustment date. 44 Fed.Reg. 16832-33 (1979). Although many comments were received, not one suggested that the BLM must complete the readjustment prior to the anniversary date of the lease.

and the Secretary rely on *Rosebud Coal Sales Co., Inc. v. Andrus,* 667 F.2d 949 (10th Cir.1982).

The coal lease in *Rosebud* was entered into on April 5, 1935, and, under MLLA (1920) and the terms of the lease, was subject to readjustment by the Secretary at the end of each succeeding 20–year period. Accordingly, the end of the second 20–year period occurred on April 5, 1975. In *Rosebud,* there was no notice of any sort sent the coal company by any representative of the Department of the Interior until October 4, 1977, two and one-half years after the expiration of the second 20–year period. On this latter date a notice was sent the coal company by the Department advising the former that the terms and conditions of the existing lease were going to be readjusted to conform with the requirements of FCLAA (1976). The IBLA held that there could be a readjustment of the terms and conditions of Rosebud's lease at a time over two and one-half years after the anniversary date of the lease. California Portland Cement Co., Rosebud Coal Sales Co., 40 IBLA 339 (1979). Rosebud sought judicial review of that administrative decision. The United States District Court for the District of Wyoming held that the lease could not be readjusted two and one-half years after the anniversary date of the lease and reversed the IBLA's decision.

■ On appeal, in *Rosebud,* we affirmed the district court, stating that the issue was a "narrow one", i.e., "whether by a notice given about two and one-half years after the anniversary date the Department has authority to exercise a right given it under the Mineral Leasing Act to readjust the terms of the coal lease." 667 F.2d at

950. Our answer in *Rosebud* to that narrow issue was that such notice did not give the Department authority to readjust. In so holding, we stated that MLLA (1920) and the lease provisions "provide a right to the government in the nature of an option to make adjustments it considers necessary or to let the opportunity pass." *Id.* at 951. Further, we indicated quite clearly that this option must be exercised in timely fashion, or it is waived by inaction, and that an attempt two and one-half years after the anniversary date to serve notice on the Coal Company of an intent to readjust is not timely. In our view, *Rosebud* strongly suggests that a notice of an intent to readjust terms and conditions of a coal lease given a coal company on or shortly before the 20–year anniversary date preserves the Department's right under MLLA and the lease provisions to readjust the terms within a reasonable time thereafter, and we now so hold.[8]

### No. 84–2175

The district court, after holding that the Secretary's readjustment of the royalty rate in FMC's two leases to 12½% of the value of the coal was timely, thereafter held that the readjustment was improper. The Secretary appeals from that part of the district court's judgment. In essence, the district court held that section 6 of FCLAA (1976) did not apply to leases *pre-existing* FCLAA (1976) even where the anniversary date of the lease was *subsequent* to FCLAA (1976) and that, such being the case, by the terms of FMC's leases any readjustment must be "reasonable" and "should only be altered upon a complete evaluation of all the factors involved in an

---

**8.** In *Rosebud,* notice that there would be readjustments in the terms and conditions of the lease was given the company on October 4, 1977, two and one-half years after the 20-year anniversary date. On November 28, 1977, Rosebud was given the readjusted terms. Rosebud filed objections which were subsequently overruled by the BLM. The decision of the IBLA upholding the ruling of BLM occurred on May 10, 1979 (40 IBLA 339). On judicial review, the focus of the district court, and of this court on appeal, was exclusively on the *date* of notice, and the *date* of final action by BLM was not mentioned, let alone relied on, by either the district court or this court. Rather, as stated,

both the district court and this court were concerned only with the *date* of the notice of intent to readjust.

Option contracts are usually exercised by giving notice of acceptance. *Restatement (Second) of Contracts,* § 63, comment f (1979); A. Corbin, 1A *Corbin on Contracts,* § 264 (1963). Although time is of the essence in accepting the option, once a timely acceptance is made, additional time may be allowed to perform the terms of the option. *Id.,* § 273 at 600. Hence once the Department has exercised its option to readjust in a timely fashion, it has a reasonable time thereafter in which to set the terms of the lease.

individual case." We are not in accord with this reasoning or the result reached by the district court.

Section 7 of MLLA (1920), set forth above in footnote 2, provides, in effect, that a lease shall be for an indeterminate period at a specified royalty rate, fixed by the Secretary, of not less than five cents per ton, subject to the further condition that at the end of each 20–year period "such readjustment of terms and conditions may be made as the Secretary of the Interior may determine, unless otherwise provided by law at the expiration of such periods." The leases at issue incorporated this language reserving in the lessor the right to readjust terms and conditions "unless otherwise provided by law." The quoted language in MLLA (1920) incorporated into the leases is of particular importance. To us it quite clearly means that at the end of a 20–year period the Secretary may fix, *inter alia*, such a new royalty rate as he, or she, may determine is proper, unless law in effect at the expiration of such 20–year period provides differently.[9] Applied to the present case, such means that the Secretary on the anniversary date of FMC's leases could increase the royalty rate as he

deemed proper, subject, however, to any statutory law in effect on such anniversary date. And statutory law in effect on FMC's anniversary date provided, in essence, that though the Secretary could, as before, change the previously existing royalty rate to one he determined to be proper, the adjusted new rate could not be less than 12½% of the value of the coal. 30 U.S.C. § 207 (1982). Stated differently, MLLA (1920) had a minimum royalty rate of five cents per ton of coal, and FCLAA (1976) raised the minimum royalty rate to 12½% of the value of the coal.[10] Admittedly, this is a drastic increase in royalty rate, but such is a matter for Congress. Further, and importantly, we find nothing in our reading of FCLAA (1976), or in its legislative history, to indicate that FCLAA (1976) was not to be applied to pre-FCLAA coal leases on their post-FCLAA anniversary date.[11]

As stated, FMC's leases generally tracked the language of MLLA (1920) with the addition, however, of the word "reasonably", i.e., the lessors' "right reasonably to readjust." However, we do not regard the use of the word "reasonably" to alter the present situation, since the leases them-

9. We do not interpret the language in MLLA (1920), which was incorporated verbatim in the two leases here involved, as only meaning that the Secretary on an anniversary date may readjust unless the law in effect at the time of readjustment has taken that right away. It no doubt covers that possibility. But in our view it also permits Congress to allow the Secretary to continue to have the right to readjust, but at the same time circumscribe that right by enacting, for example, a revised minimum royalty rate. The power to do the greater includes the power to do the lesser.

10. FMC contends applying FCLAA's terms at readjustment of a pre-FCLAA leases constitutes a retroactive application of the statute. In *Rosebud* we noted that FCLAA was not intended to be retroactive. 667 F.2d at 952. While we continue to adhere to that belief, we are not persuaded that the statute was applied retroactively in this case. In *Rosebud* the lease at issue came due for readjustment over a year before FCLAA was passed by Congress. In contrast FMC's leases could only be readjusted as of March 1, 1983, over six years *after* FCLAA amended the MLLA (1920). The Secretary clearly had the right to set new terms on the readjustment date and it is not a retroactive

application of FCLAA to set the new terms in accordance with existing law.

11. To the contrary, there is evidence that FCLAA terms were meant to apply on post-FCLAA readjustments. Specifically when Congress amended portions of FCLAA in 1978 it was aware of Interior's interpretation that FCLAA terms were to be applied at the time of readjustment. See S.Rep. No. 1169, 95th Cong., 2d. Sess. 7 (1978) (In discussing the 1978 modification of FCLAA's § 3, the report noted that "all leases of course would be subject to the provisions of the 1976 amendments at the expiration of their original lease terms."); see also *Coal Leasing Amendments,* Hearings on S3189, Before the Subcommittee on Energy Production and Supply, 95th Cong., 2d. Sess. 15 (1978) (statement of Guy Martin, Assistant Secretary of Interior); Letter from Department of Interior, Solicitor's Office, to Senator Jackson (Sept. 12, 1978). Congress' failure to alter this interpretation while amending the statute in other respects indicates that legislative intent has been correctly discerned. *Commodity Futures Trading C'mmn. v. Schor,* —— U.S. ——, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986); *North Haven Board of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982).

selves used the additional statutory language "unless otherwise provided by law at the expiration of any such period." And, as indicated, the law as of March 1, 1983, did "otherwise provide."[12]

In sum, on the readjusted royalty rate issue, we believe the result reached gives effect to the plain meaning of the applicable statutes, which is of course controlling, and at the same time squares with the language used in the leases themselves.

Judgment affirmed in part and reversed in part, and case remanded for further proceedings consonant with this opinion.

---

**12.** FMC argues it is at least entitled to an individualized evaluation of its lease at readjustment. However, as the Secretary was directed by law to raise the royalty rate to at least 12½% of the value of the coal mined, an individualized evaluation could not have produced any result more favorable to FMC. Further Interior does allow objections to be filed and also provides a process by which they may be considered. See 43 C.F.R. § 3452.1–1(d). In addition Congress has provided for individualized rate relief in § 39 when necessary to promote development or to allow the leases to be successfully operated. 30 U.S.C. § 209 (1982). FMC has not yet applied for this relief.