816 F.2d 502
 COASTAL STATES ENERGY COMPANY, Plaintiff-Appellant,
v.
Donald P. HODEL, Secretary of the United States Department
of the Interior; Robert F. Burford, Director of the Bureau
of Land Management, United States Department of the
Interior; Robert Lopez, Chief, Minerals Section, Utah State
Office of the Bureau of Land Management, United States
Department of the Interior; and the United States
Department of the Interior, Defendants- Appellees.
Sierra Pacific Power Company; Utah Mining Association;
State of Utah; Unelco, Inc., Amicus Curiae.
 No. 86-1301.
 United States Court of Appeals,
Tenth Circuit.
 April 9, 1987.
Rehearing Denied July 8, 1987.
 
 Lawrence E. Stevens (Patrick J. Garver and Patricia J. Winmill of Parsons, Behle & Latimer, Salt Lake City, Utah; and Brian E. McGee of Parcel & Mauro, Denver, Colo., with him on the briefs), for plaintiff-appellant.
 Peter Stirba, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on the brief), Salt Lake City, Utah, for defendants-appellees.
 John Madariaga and Margaret A. Manes, Reno, Nev., for amicus curiae Sierra Pacific Power Co.
 David L. Wilkinson, Dallin W. Jensen and Michael M. Quealy, Salt Lake City, Utah, for amicus curiae State of Utah.
 K.L. McIff of Jackson, McIff & Mower, Richfield, Utah, for amicus curiae Unelco, Inc.
 James T. Jensen, Price, Utah, for amicus curiae Utah Mining Ass'n.
 Before LOGAN, MOORE and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This dispute concerns a readjustment by the Secretary of the Interior of the terms and conditions of two coal leases between the United States and Coastal States Energy Company, the latter a Texas corporation which operates an underground coal mine, known as the SUFCo Mine, in Sevier County, Utah. On administrative appeal, the Interior Board of Land Appeals (IBLA) upheld, in the main, the readjustments made by the Bureau of Land Management (BLM), holding that the readjustments were timely made and were themselves lawful. Coastal States Energy Co., 70 IBLA 386 (1983). Thereafter Coastal filed a petition for review in the United States District Court for the District of Utah. After discovery, Coastal and the Secretary filed motions for summary judgment. The district court granted summary judgment for the Secretary on all of Coastal's claims except the third claim.[1] Subsequently, additional evidentiary matter bearing on the third claim was given the district court. Then, after further hearing, the district court granted the Secretary summary judgment on Coastal's third claim. The district court's opinion entering summary judgment in favor of the Secretary on all of Coastal's claims appears as Coastal States Energy Co. v. Watt, 629 F.Supp. 9 (D.Utah 1985). On appeal, we affirm with one exception. The instant case is a companion case to FMC Wyoming Corporation v. Hodel, 816 F.2d 496 (10th Cir.1987).
 
 
 2
 Coastal, as the successor in interest, holds two leases issued by the Secretary under the Mineral Lands Leasing Act of 1920 (MLLA), 41 Stat. 437 (1920), amended by 30 U.S.C. Sec. 201 et. seq. (1976), permitting underground coal mining in Sevier County, Utah. The first lease, designated as the SL lease, was entered into on September 11, 1941. The second lease, designated the U lease, was executed on March 1, 1962. MLLA (1920) provided that coal leases issued by the Secretary would be for an indeterminate term, but subject to the right of the Secretary to readjust the terms of the lease at the end of each 20-year period following the date of issuance of the lease. 41 Stat. 437, Sec. 7 (1920). In accord with the provisions of MLLA (1920), both of Coastal's leases provided for readjustment of terms and conditions at the end of each 20-year period following the date of issuance of the lease.[2]
 
 
 3
 Coastal's SL lease had its first 20-year anniversary date on September 11, 1961. At that time the SL lease was readjusted by the Secretary, the readjustment including raising the royalty rate from ten cents to fifteen cents per ton of coal mined.[3]
 
 
 4
 The second 20-year anniversary date for the SL lease was September 11, 1981. On July 9, 1981, 63 days before the September 11, 1981, anniversary date, BLM sent notice to Coastal of its intent to readjust the terms and conditions of the SL lease.[4] The readjusted terms and conditions of the SL lease were sent Coastal on September 28, 1981. Coastal objected to the readjusted terms and conditions. The BLM, on March 18, 1982, dismissed these objections, and, as above indicated, on February 9, 1983, the IBLA, on administrative appeal, upheld in major and pertinent part the decision of BLM. Coastal States Energy Co., 70 IBLA 386 (1983).
 
 
 5
 Coastal's U lease had its first 20-year anniversary date on March 1, 1982. On October 9, 1981, over five months before the March 1, 1982, anniversary date, the Secretary gave notice to Coastal of his intent to readjust the terms and conditions of the U lease. On December 24, 1981, slightly more than two months before the March 1, 1982, anniversary date, BLM sent the readjusted terms and conditions to Coastal. Coastal's objections to the readjustments to the U lease were dismissed by the BLM in its decision of March 18, 1982, and BLM's action in regard to the U lease changes was upheld with one minor exception by the IBLA in its decision of February 9, 1983. 70 IBLA 386. Coastal then sought judicial review of the IBLA's decision of February 9, 1983, as such relates to both leases.I. Timeliness of the Readjustment
 
 
 6
 Section 7 of MLLA (1920) provides that a coal lease issued pursuant to the Act shall be for an indeterminate period, but upon the condition that "at the end of each 20-year period" succeeding the original date of the lease the Secretary may readjust the terms and conditions of the original lease. Coastal's two leases contain language tracking the statutory language. In the companion case of FMC Wyoming Corp. v. Hodel, 816 F.2d 496 (10th Cir.1987), we found that notice of intent to readjust the terms and conditions of a coal lease sent on or before the anniversary date preserves the Department's right to readjust the terms within a reasonable time thereafter. Having carefully considered Coastal's arguments to the contrary, we again conclude that the readjustment of Coastal's leases was timely as the Interior duly notified Coastal of its intent to readjust the lease prior to the anniversary dates of the lease.[5]
 
 
 7
 II. Lawfulness of the Readjusted Terms and Conditions
 
 
 8
 The BLM readjusted the terms and conditions of Coastal's two leases in several particulars, including the royalty rate increase to 8% of the value of the coal mined, the deletion of the credit against royalty payments for rental payments, the substitution of monthly royalty payments for quarterly payments, increased bond requirements, and change of the readjustment intervals from 20 to 10 years. Coastal puts in issue the lawfulness of all these readjustments, with particular emphasis, of course, on the royalty increase.
 
 
 9
 Our starting point in this discussion is MLLA (1920), which was the statutory authority under which the present leases were issued by the Secretary. Section 7 of that Act provided as follows:
 
 
 10
 Leases shall be for an indeterminate period ... upon the further condition that at the end of each 20-year period succeeding the date of the lease such readjustment of terms and conditions may be made as the Secretary of the Interior may determine, unless otherwise provided by law at the expiration of such periods.
 
 
 11
 Both of Coastal's leases incorporated the language of this statute.
 
 
 12
 As we stated in FMC Wyoming Corp., supra, section 7 of the Act, inter alia, clearly advises the lessee coal company that at the end of 20 years the Secretary is empowered to readjust the terms and conditions of the coal lease as he, or she, may determine. This is, of course, a very broad authority which Congress saw fit to grant to the Secretary, an authority which is only subject to the proviso "unless otherwise provided by law at the expiration of such [twenty-year] periods." So, at the end of 20 years, the Secretary may readjust as he, or she, determines, unless the statutory law in effect on the 20-year anniversary date provides, for example, that a particular term be included in the lease.[6] As we found in FMC Wyoming Corp., supra, the passage of FCLAA (1976) established such statutory law, setting forth the minimum provisions for federal coal leases. Such being the case, the Secretary in readjusting the terms and conditions of Coastal's leases was required to act in conformity with FCLAA (1976).
 
 
 13
 Although, as indicated, the Secretary readjusted several significant terms and conditions of the SL and U leases on their 20-year anniversary dates, primary focus is on the increased royalty rate. On the anniversary date of each lease Coastal was paying, and for the prior 20 years had been paying, a royalty rate of fifteen cents per ton of coal mined. Although MLLA (1920) empowered the Secretary to originally determine and fix the royalty rate, it also provided that such rate should not be less than five cents per ton. FCLAA (1976), in effect, reaffirmed the authority of the Secretary to determine and fix the royalty rates of coal leases, but also provided that such rate must be "not less than twelve and one-half per centum of the value of the coal ..., except that the Secretary may determine a lesser amount in the case of coal recovered by underground mining operations." Acting pursuant to this statute, the Department published a regulation which reads as follows:
 
 
 14
 A lease shall require payment of a royalty rate of not less than 8 per centum of the value of the coal removed from an underground mine, except that an authorized office may determine a lesser amount, but in no case less than 5 percent if conditions warrant.
 
 
 15
 43 C.F.R. Sec. 3473.3-2(a)(3) (1979).
 
 
 16
 The BLM interpreted the foregoing regulation as meaning that on the anniversary dates of Coastal's underground coal leases the Minerals Management Service had no authority to recommend a royalty rate less than 8% of the value of the coal mined, and in its decision said so in just so many words. BLM went on to add that if Coastal felt the 8% rate to be excessive, its only avenue of relief was to file an application for temporary royalty rate reduction under section 39 of MLLA.[7] See 30 U.S.C. Sec. 209 (1982).
 
 
 17
 The IBLA, upholding, on appeal, the ruling of the BLM that under the applicable regulations Coastal's royalty rate must be initially readjusted to 8% of the value of the removed coal, rather than a lesser figure, quoted the following language with approval:
 
 
 18
 Departmental regulation 43 CFR 3473.3-2 provides two ways of granting underground coal lessees relief from the statutory 12 1/2 percent royalty. Subsections (a)(1) and (a)(3) implement 30 U.S.C. Sec. 207(a) (1976) and provide that a rate as low as 5 percent may be determined at lease issuance.... Alternatively, the Department may establish a royalty rate in the lease and provide relief after lease issuance upon application of the lessee under subsection (d), which implements 30 U.S.C. Sec. 209 (1976). Appellant has not persuaded us that it is unreasonable to establish an 8 percent royalty rate in the lease now, since the rate may temporarily be reduced later if conditions warrant. If a lower rate is put into the lease now and economic conditions change favorably during the term of the lease, there will be no opportunity for upward adjustment of the royalty figure until the lease is again ripe for readjustment. The method chosen by BLM thus assures the United States a fairer return over the life of the lease, provides appellant some relief from the statutory 12 1/2 percent rate, yet affords appellant an opportunity for further royalty relief when it is really needed. We previously have affirmed BLM decisions denying special royalty relief at lease readjustment, requiring lessees to seek such relief under 43 CFR 3473.3-2(d). Lone Star Steel Co., 65 IBLA 147 (1982); Garland Coal and Mining Co., 49 IBLA 400 (1980).
 
 
 19
 Coastal States Energy Co., 70 IBLA 386, 393 (1983) (quoting Blackhawk Coal Co., 68 IBLA 96, 99 (1982)).
 
 
 20
 As mentioned at the outset, the district court on review of the decision of IBLA initially denied the Secretary's motion for summary judgment on Coastal's third cause of action, which concerned the imposition of the 8% royalty rate on coal recovered in underground mines. Subsequently, after a more complete rule making record was presented to the district court, the district court granted the Secretary's motion for summary judgment on the third cause of action and upheld the readjusted royalty rate of 8%. In its opinion, the district court carefully analyzed the matter and concluded that initially fixing Coastal's royalty rate at 8% was proper and noted that there was a procedure whereby Coastal could later seek review and relief if it could justify a lesser rate. See 629 F.Supp. 9 at 29-33 (D.Utah 1985). We are in general accord with the district court's handling of this matter with one conceivably important exception.
 
 
 21
 The exception concerns the authority of the Minerals Management Service, in the instant case, to consider on the anniversary date of Coastal's underground mine leases a royalty rate less than 8% of the value of the coal mined. The regulation in the first instance requires that the royalty rate shall not be less than 8% of the value of the coal mined, but the same regulation in the next breath goes on to state that, notwithstanding the 8% figure, "an authorized officer may determine a lesser amount, but in no case less than 5% if conditions warrant." BLM, IBLA, and the district court have all held that, notwithstanding the rather clear language of the regulation, the royalty rate on the anniversary date of a coal lease must be readjusted to 8%. Agency interpretation of its own regulations is to be accorded considered judicial deference, but, at the same time, the courts should require agency action to conform to its own rules and regulations.
 
 
 22
 As applied to the instant case, Coastal suggests that, assuming the applicability of FCLAA (1976), under the regulation any mandatory minimum royalty rate is 5%, not 8%, of the value of the coal mined. We reject that suggestion. However, we agree with Coastal that it is error for the BLM to automatically fix the readjusted royalty rate for all underground coal at 8%. Such completely ignores the ensuing proviso in the same regulation that a lesser amount, but not less than 5%, may be set, "if conditions warrant."
 
 
 23
 Subsequent to IBLA's decision in the instant case, the IBLA recently held that Minerals Management Service, now succeeded by BLM, has the authority to set a royalty rate for underground coal at less than 8% in readjusting an existing coal lease. In Utah Power & Light, 80 IBLA 180 (1984), the BLM "admitted" that the regulations do allow a royalty rate of less than 8% to be placed on a readjusted undermine coal lease "if conditions warrant." IBLA agreed with BLM and remanded the case there before it to the BLM for further consideration. This particular pronouncement of IBLA is in accord with our reading of the regulations.[8]
 
 
 24
 As indicated, the readjusted royalty rate was not the only issue raised by Coastal in its petition for review, although it was perhaps the principal one. However, having concluded that FCLAA (1976) has application to the Secretary's readjustment of the terms and conditions of Coastal's two leases, it follows that Coastal's other claims concerning terms mandated by FCLAA were also properly rejected. In sum, FCLAA (1976) applies to pre-FCLAA leases on their post-FCLAA anniversary date under which the leases were issued. See FMC Wyoming Corp., supra. Such was the intent behind FCLAA (1976) and such intent is in accord with MLLA (1920). Other action by the Secretary in readjusting Coastal's leases not mandated by FCLAA (1976) is, in our view, a reasonable exercise of the Secretary's broad authority to readjust.[9]
 
 
 25
 Judgment affirmed, except for that part of the judgment which upheld the IBLA's decision that on the anniversary dates of Coastal's two leases the royalty rate had to be set at 8% of the value of the coal mined, and that a lesser figure could not even be considered. That part of the judgment only is reversed, and that particular matter only shall, by order of the district court, be remanded to IBLA with direction that further proceedings be in accord with this opinion.[10]
 
 
 
 [1]
 Coastal's third claim raised several issues challenging the validity of the Department's 8% royalty readjustment regulation
 
 
 [2]
 Coastal's SL lease reserved in the lessor "[t]he right to readjust and fix royalties payable hereunder and other terms and conditions at the end of 20 years from the date hereof and thereafter at the end of each succeeding 20 year period during the continuance of this lease unless otherwise provided by law at the time of expiration of any such period." The U lease contained similar language modifying only the "right to readjust" to read "the right reasonably to readjust."
 
 
 [3]
 The original royalty rate for the SL lease was 15cents per ton. However during the first 20 years, this rate was reduced to 10cents per ton as a result of economic hardship
 
 
 [4]
 Coastal received a standard notice informing Coastal that its leases would be readjusted to the minimum royalty rate prescribed in Interior's regulations. The notice also stated that the readjusted terms would be sent within two years of the date of the notice
 
 
 [5]
 Coastal also contends that the Interior's own regulations require a final readjustment prior to the anniversary date. We do not agree. A fair reading of 43 C.F.R. Sec. 3451.1 indicates only notice is required before the readjustment date. This reading comports with the Secretary's interpretation of the regulation. See Lonestar Steel Co., 65 IBLA 147 (1982). An agency's interpretation of its own regulation is of controlling weight unless plainly erroneous or inconsistent with the regulation. U.S. v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)
 Nor do we find the regulations governing the timing of readjustments to be arbitrary or capricious. As found by the district court, the challenged regulations were published by the Secretary and comments were received. However not one comment suggested the readjustment must be final prior to the readjustment date. Coastal States Energy Co. v. Watt, 629 F.Supp. 9, 17-19 (D.Utah 1985). Further the Secretary justified its requirement of notice as assuring "timely and competent administration of leases by the self-imposition of the sanction of waiver" thus "guaranty[ing] accountability." 44 Fed.Reg. 42601-02 (1970). The scope of review under the arbitrary and capricious standard is narrow and this court may not substitute its judgment for that of the agency. Motor Vehicle Manufacturer's Ass'n. v. State Farm Mutual Automobile Insurance, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). In short we find no basis for Coastal's contention.
 
 
 [6]
 We do not interpret the language in MLLA (1920), which was incorporated verbatim in the two leases here involved, as only meaning that the Secretary on an anniversary date may readjust unless the law in effect at the time of readjustment has taken that right away. It no doubt covers that possibility. But in our view it also permits Congress to allow the Secretary to continue to have the right to readjust, but at the same time circumscribe that right by enacting, for example, a revised minimum royalty rate. The power to do the greater includes the power to do the lesser
 
 
 [7]
 Section 39 allows the Secretary to reduce or waive a royalty rate whenever he or she judges it necessary in order to promote development or allow the lessee to successfully operate. This power has existed since 1946 and was not altered by FCLAA (1976). See 60 Stat. 957 (1946); 30 U.S.C. Sec. 209 (1982)
 
 
 [8]
 In other decisions, however, the IBLA has reaffirmed the position taken in Coastal. See, e.g., Kanawha & Hocking Coal & Coke Co., 93 IBLA 179 (1986); Consolidation Coal Co., Chevron Coal Development Co., 86 IBLA 60 (1985)
 
 
 [9]
 FCLAA did not specifically address the following terms which Coastal contends are unreasonable: the increased bonding requirement; the change from monthly to quarterly rental payments and, the deletion of a right to credit rental payments against royalty payments. As noted in Rosebud, under MLLA (1920) and the lease language, the Secretary possesses a "very broad power to make changes considered to be in accordance with the proper administration of the lands." Rosebud Coal Sales Co., Inc. v. Andrus, 667 F.2d 949, 951 (10th Cir.1982). Coastal contends this power is limited by its lease language to "reasonable" changes. As discussed, under the MLLA (1920) and the leases themselves, the Secretary's power is limited where the terms are "provided by law." As to those terms not so provided, Coastal has merely asserted that they are unreasonable without providing any basis for its claim. We do not agree and hence affirm the readjustment of these leases
 
 
 [10]
 We do not reach the issue of whether failure to notify the attorney general of the readjustment as required by 30 U.S.C. Sec. 184(l )(2) (1982) rendered the readjusted lease unlawful. We agree with the district court that the issue was waived as Coastal did not present it in the administrative proceedings below. In spite of Coastal's claim that the action violated the specific language of the statute, we find no exceptional circumstances justifying judicial review of this issue. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); see also, Sunray Mid-Continent Oil Co. v. FPC, 364 U.S. 137, 157, 80 S.Ct. 1392, 1403, 4 L.Ed.2d 1623 (1960); U.S. v. L.A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952)