TRAPPER MINING INC.,
Plaintiff–Appellant,

v.

Manuel LUJAN, Jr., Neil Morck, Bruce
Harris, and R.W. Mullin,
Defendants–Appellees.

WYODAK RESOURCES DEVELOP-
MENT CORP., Plaintiff–Appellee,

v.

Manuel LUJAN, Jr., Secretary of the De-
partment of Interior; and William H.
Lee, Chief, Branch of Mining Law and
Solid Minerals, Wyoming State Office
Bureau of Land Management, United
States Department of the Interior, De-
fendants–Appellants.

Nos. 89–1372, 90–8025.

United States Court of Appeals,
Tenth Circuit.

Jan. 15, 1991.

Richard L. Fanyo (Sasha A. Karpov, with him on the briefs), of Welborn Dufford Brown & Tooley, P.C., Denver, Colo., for plaintiff-appellant Trapper Mining Inc.

Evelyn Ying, Dept. of Justice (Myles E. Flint, Deputy Asst. Atty. Gen., Martin W. Matzen and Jean A. Kingrey, Dept. of Justice, Steve Brown and Lyle Rising, Dept. of the Interior, Washington, D.C., with her on the brief), Washington, D.C., for defendants-appellees Manuel Lujan, Jr., et al.

Evelyn Ying, Dept. of Justice (George W. Van Cleve, Acting Asst. Atty. Gen., Martin W. Matzen and Jean A. Kingrey, Dept. of Justice, Steve Brown and Lyle Rising, Dept. of the Interior, Washington, D.C., with her on the briefs), Washington, D.C., for defendants-appellants Manuel Lujan, Jr., et al.

Timothy L. Thomas of Morrill Brown & Thomas, Rapid City, S.D., for plaintiff-appellee Wyodak Resources Development Corp.

Before LOGAN and MOORE, Circuit Judges, and GREENE, District Judge.[*]

---

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

JOHN P. MOORE, Circuit Judge.

In this consolidated appeal, the question before us is whether the Federal Coal Leasing Amendments Act (FCLAA) automatically converts the twenty-year readjustment interval in pre-FCLAA coal leases to ten-year intervals at the first post-FCLAA readjustment date. In a suit brought by Trapper Mining Inc., the United States District Court for the District of Colorado concluded that it does. Faced with the identical issue in a suit brought by Wyodak Resources Development Corp., the United States District Court for the District of Wyoming reached the opposite result, holding that the Secretary of the Interior must adopt the new interval through a readjustment. We affirm the judgment of the Colorado District Court and reverse the judgment of the Wyoming District Court.

## I. FACTUAL AND LEGAL BACKGROUND

The United States, acting through the Bureau of Land Management (BLM) and the Secretary of the Interior (the Secretary), granted coal leases to Trapper Mining Inc.'s predecessor in interest [1] on June 1, 1958, and to Wyodak Resources Development Corp. on May 1, 1959. The leases provided for twenty-year intervals at which the Secretary could readjust terms, qualified by the clause "unless otherwise provided by law." Section 3(d) of each lease reserves to the lessor

[t]he right reasonably to readjust ... terms and conditions at the end of 20 years from the date hereof and thereafter at the end of each succeeding 20–year period during the continuance of this lease unless otherwise provided by law at the time of the expiration of any such period.

The introductory paragraph of the leases also incorporates § 7 of the Mineral Lands Leasing Act (MLLA) of 1920, as amended, 30 U.S.C. § 207 (1958), which provided similarly that the leases

shall be for indeterminate periods upon condition ... that at the end of each 20–year period succeeding the date of the lease such readjustment of terms and conditions may be made as the Secretary of the Interior may determine, unless otherwise provided by law at the time of the expiration of such periods.

In 1976, Congress amended the law, replacing § 7 of MLLA with § 6 of FCLAA. One of the changes instituted by § 6 is a shorter readjustment interval of ten years. Section 6 provides in part that

rentals and royalties and other terms and conditions of the lease will be subject to readjustment at the end of its primary term of twenty years and at the end of each ten-year period thereafter if the lease is extended.

The first scheduled readjustment opportunities for Trapper's and Wyodak's leases occurred in 1978 and 1979, respectively, the twentieth anniversaries of the leases. The BLM failed to take advantage of either of these opportunities, sending untimely notice to Trapper in 1979 and never sending actual changes in terms and conditions to Wyodak despite timely notice. The BLM subsequently notified Trapper and Wyodak (lessees) that their leases would be readjusted in 1988 and 1989, respectively, ten years after the twentieth anniversaries of the leases. The lessees objected that the ten-year interval cannot apply to their leases because the Secretary did not adopt it through a readjustment at the previous opportunities.

After the BLM and Interior Board of Land Appeals (IBLA) rejected their complaints, the lessees filed suits for declaratory and injunctive relief to prevent readjustment until 1998 and 1999. On cross-motions for summary judgment, the Colorado District Court dismissed Trapper's case in a bench ruling. However, the Wyoming District Court granted Wyodak's requested relief, also on cross-motions for summary judgment.

---

**1.** The leases were originally issued to Utah Construction Co., later renamed Utah International Co. Utah International then subleased them to

Trapper and later assigned the leases to General Electric Holdings, Inc. In 1988, General Electric assigned the leases to Trapper.

## II. STANDARD OF REVIEW

When a matter comes to us after summary judgment, we apply the same standards employed by the trial court under Fed.R. Civ.P. 56(c). *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Since no material factual disputes exist, we consider *de novo* which party is entitled to judgment as a matter of law.

Section 706 of the Administrative Procedure Act, 5 U.S.C., provides the basis for our review of the Secretary's actions. We "decide all relevant questions of law," setting aside agency determinations if they are "not in accordance with the law" or are "in excess of statutory jurisdiction, authority, or limitations."

## III. APPLICATION OF FCLAA

This dispute concerns the proper readjustment interval for pre-FCLAA leases, absent a readjustment by the Secretary at the first post-FCLAA opportunity. We have never faced this combination of circumstances before, but we have examined the readjustment interval and the effect of FCLAA on pre-FCLAA leases in other contexts.

In *Rosebud Coal Sales Co. v. Andrus*, a lease was due for readjustment in 1975 and the Secretary improperly attempted to readjust it two and one-half years later in 1977. We held that the Secretary waives his readjustment opportunity by failing to act, precluding readjustment until the next scheduled opportunity. 667 F.2d 949, 952 (10th Cir.1982). The twenty-year readjustment interval gave "a right to the Government in the nature of an option to make adjustments it considers necessary or to let the opportunity pass.... The opportunity comes at intervals albeit long but so prescribed by Congress." *Id.* at 951.

We also established in *Rosebud* that FCLAA cannot apply to pre-FCLAA leases via pre-FCLAA readjustment opportunities. The passage of FCLAA in 1976, one year after the scheduled readjustment, did not justify the Secretary's belated action as an effort to make the lease conform to FCLAA. Such a result would amount to a retroactive application of FCLAA which Congress never intended. *Id.* at 952.

Our next encounter with FCLAA's application to pre-FCLAA leases arose when the Secretary sought to apply FCLAA on post-FCLAA readjustment dates. In companion cases, we held that the Secretary not only can but also must impose FCLAA's mandatory terms at post-FCLAA readjustment opportunities. *FMC Wyoming Corp. v. Hodel*, 816 F.2d 496 (10th Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988); *Coastal States Energy Co. v. Hodel*, 816 F.2d 502 (10th Cir.1987). In *FMC*, we reasoned first that the language "unless otherwise provided by law" in the original leases left the Secretary's right to readjust subject to later statutory changes by Congress. Then we noted that § 6 of FCLAA, in effect when FMC's leases came up for readjustment, required a royalty rate of not less than 12½%. We concluded that the Secretary had no choice but to impose a minimum royalty rate of 12½%. *FMC*, 816 F.2d at 501. We arrived at the same result in *Coastal* for other terms mandated by FCLAA, including the change in readjustment interval. However, the same analysis yielded a different result for the underground coal royalty rate. Section 6 excepts underground coal from the mandatory 12½% rate. Therefore, the Secretary erred in automatically applying an 8% rate without even considering a lesser one. *Coastal*, 816 F.2d at 508.

Tenth Circuit precedent thus establishes (1) when the Secretary waives a pre-FCLAA readjustment opportunity, he cannot arbitrarily choose the next readjustment interval, and (2) when the Secretary undertakes a post-FCLAA readjustment of a pre-FCLAA lease, he must adopt the readjustment interval prescribed by Congress in FCLAA.

The question before us now is whether FCLAA's ten-year readjustment interval takes effect automatically when the Secretary waives the first post-FCLAA readjustment opportunity. Applying the same two-step reasoning we used in *FMC* and *Coastal*, we conclude that Congress has the au-

thority to change the readjustment interval by statute and exercised that authority in FCLAA. The Secretary was thus entitled to readjust Trapper's leases in 1988 and Wyodak's in 1989.

### A. Congressional Authority to Alter Interval

■ The lease agreements between the government and the lessees created commercial relationships governed by contract law. *Rosebud,* 667 F.2d at 951. Congress is entitled to modify such contracts through subsequent legislation unless the right is " 'surrendered in unmistakable terms.' " *Bowen v. Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 52, 106 S.Ct. 2390, 2397, 91 L.Ed.2d 35 (1986) (citing *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 148, 102 S.Ct. 894, 907, 71 L.Ed.2d 21 (1982)). The Supreme Court has repeatedly warned that interpretations of contracts which would immunize them from the sovereign power of the United States to change its laws should be avoided if possible. *Bowen,* 477 U.S. at 52–53, 106 S.Ct. at 2396–97.

■ In *Bowen,* the Supreme Court held constitutional an amendment to the Social Security Act which affected state contractual rights. The original Social Security Act had reserved "[t]he right to alter, amend, or repeal any provision." 42 U.S.C. § 1304. In the present cases, § 7 of the MLLA and § 3(d) of the leases reserve to Congress the power to change the readjustment interval. The leases are subject to readjustment by the Secretary every twenty years "unless otherwise provided by law" at the end of such a period. We believe that exception allows Congress to change the readjustment interval to ten years independent of any action by the Secretary.

The lessees argue that the exception only reserves to Congress control over the Secretary's right to readjust terms, not direct control over specific terms. They assume that Congress delegated control of lease terms to the Secretary, retaining only the right to alter the Secretary's power to readjust. In *FMC* and *Coastal,* we determined that the clause "unless otherwise provided by law" preserves Congress' right not only to take away from the Secretary the power to readjust but also to circumscribe that power by requiring adoption of specific terms upon readjustment.[2] Neither *FMC* nor *Coastal* purported to limit the clause to those two meanings. As the D.C. Circuit recently noted, it can have multiple meanings:

> It might ... modify only the phrase "and thereafter at the end of each succeeding 20–year period during the continuance of this lease," meaning that lease readjustments would take place every twenty years, unless Congress by law required them to take place at some other interval. It might, on the other hand, modify the whole of the clause that precedes it, which would presumably mean that the lessor reserves the right to readjust the lease, except that Congress may provide by law that there shall be no readjustment. It might modify the phrase "reasonably to readjust," and thus mean that the lessor reserves the right reasonably to readjust the lease, except that Congress may provide by law for a specific readjustment of its choosing, even one that would have been unreasonable for the Secretary to make on his own under the prior law.

The D.C. Circuit held that one meaning of the clause is that Congress can require the Secretary to impose certain terms on pre-FCLAA leases during readjustment. *Western Fuels–Utah, Inc. v. Lujan,* 895 F.2d 780, 788–89 (D.C.Cir.), *cert. denied,* —

---

2. Specifically, we stated in *FMC:*
   We do not interpret the language in MLLA (1920), which was incorporated verbatim in the two leases here involved, as only meaning that the Secretary on an anniversary date may readjust unless the law in effect at the time of readjustment has taken that right away. It no doubt covers that possibility. But in our view

it also permits Congress to allow the Secretary to continue to have the right to readjust, but at the same time circumscribe that right by enacting, for example, a revised minimum royalty rate.
Footnote 6 in *Coastal* is virtually identical. *FMC,* 816 F.2d at 501, n. 9; *Coastal,* 816 F.2d at 505, n. 6.

U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 24 (1990). In the present cases, we hold that the breadth of the clause makes the first suggested meaning that Congress may directly change the interval equally valid.

## B. *FCLAA's Effect on Interval*

■ Whether Congress intended to change the readjustment interval directly through § 6 of FCLAA is a question of statutory construction. Under *Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), a court reviewing an agency's construction of a statute first makes its own inquiry into the intent of Congress on the precise issue. If that intent is ambiguous or nonexistent, then the court should defer to the agency's interpretation as long as it is reasonable. Because it is clear that Congress intended the readjustment interval to become ten years on the first post-FCLAA anniversary of pre-FCLAA leases, we need not address the lessees' attacks on the consistency of the Secretary's interpretation.

### 1. Text

When these leases came up for readjustment in 1978 and 1979, FCLAA was law. Section 6(a) provides in full:

A coal lease shall be for a term of twenty years and for so long thereafter as coal is produced annually in commercial quantities from that lease. Any lease which is not producing in commercial quantities at the end of ten years shall be terminated. The Secretary shall by regulation prescribe annual rentals on leases. A lease shall require payment of a royalty in such amount as the Secretary shall determine of not less than 12½ per centum of the value of coal as defined by regulation, except the Secretary may determine a lesser amount in the case of coal recovered by underground mining operations. The lease shall include such other terms and conditions as the Secretary shall determine. Such

rentals and royalties and other terms and conditions of the lease will be subject to readjustment at the end of its primary term of twenty years and at the end of each ten-year period thereafter if the lease is extended.

■ The final sentence of § 6(a) states that leases will be subject to readjustment every ten years after the first twenty-year period ends. The provision is self-executing: the language is mandatory and directly imposes the new interval rather than just modifying the Secretary's authority over the term. The mandatory language "will be" reflects Congress' intent to require the new interval to take effect. In *FMC* and *Coastal,* we attached similar significance to mandatory language, holding that it compels the Secretary to impose certain terms when he undertakes a readjustment.[3]

■ If the Secretary had undertaken readjustments for the present leases in 1978 and 1979, he would have had no choice but to adopt the ten-year interval, making the leases eligible for readjustment again in 1988 and 1989. Although the Secretary did not readjust at those times, the new interval automatically took effect then because the language directly imposed it. In contrast, the language in § 6 mandating the royalty rate only affects the Secretary's control over the term. It states that "[a] lease shall require payment of a royalty in such amount *as the Secretary shall determine* of not less than 12½ per centum." (Emphasis added.) This requirement is couched as a restriction on the Secretary's power, not as a direct imposition of the new rate.

We hold that the ten-year interval applies automatically in the absence of readjustment by the Secretary. The language not only circumscribes the Secretary's actions if he undertakes a readjustment but also dictates a certain result. The Secretary

---

**3.** The one exception to application of mandatory terms rests on our recognition in *Rosebud* that FCLAA cannot apply retroactively to a pre-FCLAA lease when its twenty-year anniversary occurs before 1976. However, applying the new interval to a pre-FCLAA lease on a post-FCLAA readjustment date is not retroactive because the leases are subject to change at that time. *See FMC,* 816 F.2d at 501, n. 10.

cannot thwart the intent of Congress by simply not undertaking a readjustment.

The lessees counter this analysis at two levels. First, they contend that the clause changing the interval does not apply to pre-FCLAA leases because of certain words in § 6. The clause refers to leases with "primary" terms of twenty years and requires that the lease be "extended" in order for the new interval to apply. The lessees contend that pre-FCLAA leases have indeterminate terms and do not need to be extended. However, we have previously held that the Secretary can apply FCLAA, including the new interval, to pre-FCLAA leases on post-FCLAA readjustment dates. The phrase "primary term" simply means the first twenty-year period before a lease becomes subject to readjustment. See *Western Fuels–Utah*, 895 F.2d at 784. The phrase "if extended" merely reflects that readjustments will only be appropriate while leases remain in force. *Coastal*, 816 F.2d at 505, 507. The presence of these words does not pose any special obstacle to *direct* application of the terms.

Second, the lessees insist that even if the clause is applicable to pre-FCLAA leases, the new interval cannot apply automatically because it only becomes mandatory when the Secretary undertakes a readjustment. They assume that all terms must be changed through a readjustment, and that the Secretary can waive the right to readjust any of the terms. Both steps of this analysis are flawed.

The interval must undergo readjustment, the lessees argue, because it is no different than three other mandatory terms in § 6: "A coal lease shall be for a term of twenty years.... Any lease which is not producing in commercial quantities at the end of ten years shall be terminated.... A lease shall require payment of a royalty ... of not less than 12½ per centum...." By focusing on this comparison, the lessees fail to see the distinction between mandatory and non-mandatory terms. We have never specifically held that mandatory terms must be readjusted to take effect. The lessees also fail to recognize potential

distinctions among the mandatory terms. For example, they conveniently ignore the key language distinguishing the royalty rate from the interval. Trapper also contrasts the language changing the interval to § 5(b) of FCLAA, 30 U.S.C. § 202a(5), which, Trapper contends, does directly impose terms. Section 5(b) provides that if a lessee includes a pre-FCLAA lease in a logical mining unit, then that lease "shall be subject to the provisions of this section." Trapper argues this provision demonstrates how Congress expresses intent to modify a term by law without the necessity of readjustment by the Secretary. However, this language does not preclude a finding of similar intent in the language of § 6.

■ Assuming the interval must go through readjustment, the lessees' next assumption is that the Secretary can waive his option to adopt the ten-year interval and did so by failing to readjust in 1978 and 1979. The lessees find the right to waive in *Rosebud*'s characterization of the Secretary's right to readjust as "an option." 667 F.2d at 951. However, in *Rosebud* we did not treat the readjustment interval as a term waivable by the Secretary. Immediately after describing the right to readjust as an option, we noted that the interval is "prescribed by Congress." Implicit in *Rosebud*'s holding that the Secretary can only readjust at times set by Congress is the principle that the Secretary is *entitled* to readjust at all those opportunities.

### 2. Legislative History

The parties have centered much attention on one remark by Representative Mink, Chairwoman of the House Subcommittee on Mines and Mining, during the House debate on FCLAA. Representative Mink stated: "The 533 existing Federal leases would be unaffected by the bill except to the extent its provisions are made applicable upon the periodic ten-year readjustment of lease terms, or upon the inclusion of an existing lease in a logical mining unit." 122 Cong.Rec. 489 (1976). Our analysis stands without reference to the legislative history, but we note that this remark, con-

trary to the lessees' assertions, supports our conclusion that Congress intended to change the readjustment interval by statute.

Representative Mink's statement expresses an intent for the ten-year interval to apply to pre-FCLAA leases, regardless of whether the Secretary readjusts other terms. Although the other terms of FCLAA must be "made applicable" through readjustment, Representative Mink refers to the readjustment interval as a term outside the scope of that requirement. Trapper contends that the reference to a ten-year readjustment interval merely reflects an assumption that the Secretary would validly readjust the interval period at the end of the first twenty-year term. Although this is pure speculation, such an assumption actually indicates an intent to have the new interval take effect at that time since the Secretary is required to adopt it.

## IV. WAIVER AND ESTOPPEL CLAIMS OF WYODAK

Even if the ten-year interval went into effect automatically in 1979, giving the Secretary the right to readjust Wyodak's lease in 1989, Wyodak argues the Secretary lost that right through waiver or estoppel. In a letter dated February 7, 1983, the Wyoming State Office of the BLM notified Wyodak that the next readjustment would occur in 1999. In 1987, however, the Secretary asserted his intention to readjust in 1989. Since the Wyoming District Court did not rule on Wyodak's theories of waiver or estoppel, we cannot properly review their factual basis.

Both theories are legally flawed, however. Wyodak first argues that because the Secretary's right to readjust is "in the nature of an option," *Rosebud*, 667 F.2d at 951, the Secretary holds an option contract. Under contract principles, the Secretary's letter stating that he would not exercise the option to readjust until 1999, combined with Wyodak's reliance on that statement, terminated his option to readjust in 1989. This view of the lease as an option contract distorts the *Rosebud* court's ordinary use

of the word option. An option contract is created when the offeror of the option accepts consideration in exchange for extending an irrevocable offer. *See* J. Calamari & J. Perillo, *Contracts*, § 2–25, at 121–22 (3d ed. 1987). The Secretary's option is a right reserved by Congress, not one given by the lessees in exchange for consideration.

Wyodak argues, alternatively, that the Secretary is equitably estopped from readjusting the lease in 1988. However, we disfavor the application of estoppel against the government when it thwarts enforcement of the public laws. *Emery Mining Corp. v. Secretary of Labor*, 744 F.2d 1411, 1416 (10th Cir.1984). In general, "the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917) (citations omitted). A party who enters an arrangement with the government and relies on an official's interpretation of the law "assume[s] the risk that that interpretation [is] in error." *Emery*, 744 F.2d at 1416; *see also Heckler v. Community Health Servs.*, 467 U.S. 51, 63, n. 17, 104 S.Ct. 2218, 2225–26, n. 17, 81 L.Ed.2d 42 (1983). In this case, Wyodak took the risk that the 1983 letter from a Wyoming official reflected an incorrect interpretation of the law.

## V. CONCLUSION

We conclude that Congress intended the ten-year readjustment interval to apply automatically to pre-FCLAA leases on their post-FCLAA anniversaries. The Secretary thus had the right to readjust Trapper's leases in 1988 and Wyodak's in 1989. The Secretary did not lose the right to readjust Wyodak's lease through waiver or estoppel. The judgment of the United States District Court of Colorado is AFFIRMED, and the judgment of the United States District Court of Wyoming is REVERSED.